And here I am again. Vivian Chevitz for Xavier O'Neill. Let me get my head straight here. Okay. This case involves the imposition of enhancements after a plea was entered at which the government specifically did not include sentencing enhancements, and in which those enhancements are not clearly applicable, indeed, are not applicable because they were stretched to the limits. Thus, the appellant was — the appellant's sentence was enhanced for possession of a dangerous weapon because he, quote, acted as if he had a firearm in his waistband during robbery two, though he did not have one. So if the defendant gives the appearance of possessing a dangerous weapon, even though the defendant doesn't actually have one, why does it matter whether the defendant does so by gesturing as if he had the weapon or by disguising his hand or another object as a weapon? Well, he didn't disguise his hand as a weapon. And, in fact, he just had his hand in his waistband, according to the defendant. Well, there was no factual dispute at the sentencing about whether or not he was pretending to have a gun. The PSR multiple times said he pretended to possess a firearm by holding his belt. He kept one near his waistband as if he had a firearm. So the PSR was saying it was done in a manner to simulate a gun. And there was no objection that as for a hearing, like, no, he wasn't doing that. So the issue before us, then, is simply if someone pretends to have a firearm in their waistband, does the enhancement apply or not, right? I think in your brief you were suggesting that if it's just your finger, it can't, it's not an object, but that can't be the case, right? I mean, if your finger is simulating a gun. Well, where is your finger simulating a gun so that the victim can see that you don't have a gun? No, but it's, well, the example that's given in the guideline is putting your hand in a towel to simulate a gun. In a towel. So you're saying that would be, if you're simulating a gun by putting your hand in a towel, the enhancement applies. But if you're simulating a gun by putting it in your waistband or in your shirt, suppose you have it inside of your jacket, you have your hand in your jacket. It's closer if you have your hand in a pocket. I at one point apologized, got it wrong, and said something about his hand in his pocket because one of the cases did. It wasn't his hand in his pocket. His hand was in his waistband. If you're simulating a gun, why does it matter whether it's in your pocket or in your waistband? Because you, because. If a person believes you have a gun in your waistband, why does it matter? Because the guideline says very clearly that it has, it's for possession of a dangerous weapon. So I think we're getting far afield when we say that same bump up should apply. The guideline says if you use the instrument in a manner that creates the impression that it was the instrument. So the guideline. Well, but he didn't have an instrument. What it is is the impression. He didn't have an instrument. It's very, it's clear. You can expand it, I suppose, but every example that there was concerns an instrument or an object. And we could expand it to pretense, but that is not what the guideline says. It says an object. If we want to start adding points because someone pretends to do something that scares people, that's a different matter. That's not what the guideline says. The government cites four other circuits that have all concluded that a hand in the pants or waistband or coat pocket would all qualify. I don't see any others with waistband. I saw it. Bates, 11th Circuit. Bates simulated possession of what appeared to be a dangerous weapon. When Bates reached into his pants waistband. There you go. The victim teller perceived Bates to be reaching for a weapon. It's the exact same thing. He reached into it, and that's something different. That suggests to the, I don't know if that's correct, and I don't know if I believe it, agree with it. Which doesn't matter. But he didn't there. Somebody reached into the pocket as if he was going to get something, an object. Here, it's my guy didn't have a gun. Maybe he was thinking in his mind, I don't know, I don't want the bump up for possessing a weapon. I'm going to go in there without a weapon. And it's less culpable if you don't have a weapon. That's what the guideline is about. So if we expand it, when it's not clearly applicable, I think the rule of lenity should say that's not allowed. We bump up the punishment if you have a weapon, and it's stretched to if you pretend to have a weapon in certain circumstances, if you have an object, if somebody can believe you have a weapon because your hand is in your pocket. Excuse me. You say that, and correct me if I'm wrong, that the government reached the plea agreement. Yes. When it stated that it believed that the PSR's addition of the enhancements was correct. Yes. Even though it didn't advocate for the court to have that. It should have said nothing. There's a lot of situations, you know, in the law of how you plead guilty now. When a defendant knows or the client, the lawyer tells them, you know, the government wants you to have extra points, but it's arguable, so they've come to an agreement where they're not going to give you the extra points. And you have to advise your client, maybe you're going to get the extra points in the end, which doesn't seem right, but that's what happens a lot. But if you say that the government has to stay silent. To conform with its plea agreement. But what if the government believes that it erred in its guidelines calculation? Is it supposed to remain silent? It says it made a mistake, but it didn't make a mistake. That's what it bargained for. It bargained for that, and then another defendant in the case, apparently. I understand why you're saying it bargained for that. This was a Pimentel letter. This was not a stipulated guideline. This was an estimate. It was an estimate. And the agreement said that the estimate is not binding on the government. Yes. The probation department or the court. If the guidelines offense level advocated by the government or determined by probation or the court is for any reason includes an error in the estimate different from the estimate, the defendant will not be entitled to withdraw his plea and the government will not be deemed to have breached this agreement. So it makes clear that if there is some error in the estimate, it's not a breach of the agreement. So this was not a stipulated. If it was a stipulated range, then the government would be in breach. Yes. But also under the Feldman case and the other recent cases, they have a duty to bargain in good faith. And if they know that somebody else is going to be out there advocating these two. There was no allegation that they did this in bad faith. In this case. If Judge Costner said it, could it have just been an error? They didn't look at the guideline notes carefully enough to see that these enhancements would apply? Although this is not in the record, my client has said to me, and maybe there should be a remand, that there had been a previous plea agreement with the enhancements that was rejected. I don't have that and it's not in the record, but I'm just saying that my client said that. I don't believe that the government was not aware of these enhancements. I believe that the government was aware and that it was a little bit of sentiment. The government also, when they ultimately advocated for a particular number. Yes. They advocated for a number that was consistent with the same offense level that was in the estimate as was increased only because of the criminal history. So the number they advocated for was actually not based upon a higher offense level. But it's not. It was the same offense level with a higher criminal history. It's not only the number. It's whether the crime sounds worse than it is. And if the government during the plea discussions here did not advocate for those enhancements, which are not clearly applicable, and indeed probation thought that the restraint enhancement was not applicable. You're saying advocated for it, but they didn't stand up at the sentencing and start advocating. Probation made the determination. The government said that they're correct. And they said, yes, you're right. We were wrong. That's not the same as advocating, right? I think it is in the context of sentencing and in the context of how much credibility a prosecutor has. If they said we don't, why can't they just stand up and say we didn't agree that this was applicable? We didn't advocate for that, Judge. Instead of saying, oh, yeah, it's okay. But we'll back off. They made a mistake, right? I think we should see if they really made a mistake or if in the first plea agreement, as my client has said to me, there were those proposed enhancements that then he rejected and then they were withdrawn. You'll have two minutes for rebuttal. Thank you. Good morning again, Your Honor. Nomi Berenson on behalf of the United States. I'd like to start my argument, if it's all right, with addressing the appellant's argument that the government breached the plea agreement since that was what was just being argued. As Judge Bianco noted, the government acknowledged to the district court, as it had to under its duty of candor to the court, that it believed at the time of sentencing that it had made a mistake in the plea agreement. I don't believe that, as in my capacity to represent in the United States, I'm permitted to simply appear before the court and not correct an error that I believe we have made. I don't think that that means that we're breaching the plea agreement. And, in fact, the government was careful to maintain that the recommended guidelines range, which was admittedly much higher than in the plea agreement, was based on the same offense level as calculated in the plea agreement, albeit significantly higher due to the defendant's criminal history of Category 6. Can you move on to discussion of the guideline and the hand and whether it can be considered an object? Yes. I understand commonsensically what the argument that you're making, and there's force to that argument. But the language of the text says, an object shall be considered to be a dangerous weapon for purposes of subsection B2E if A, the object closely resembles an instrument capable of inflicting death or serious bodily injury, or the defendant used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury. And then the example given, a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun. In this case, how does the hand – the hand is the object, right? Yes, Your Honor. And so tell me how this guideline applies to the hand. I think it applies consistent with the facts that were, again, and the store employees and customers believe that they were being threatened with a firearm. He was doing that in several instances by acting as if he had a firearm in his waistband or pretending to possess firearms by holding his belt, keeping one hand near his waistband as if he had a firearm. In order to create the impression and the fear that you had a firearm, he clearly wasn't just resting his hand on the outside of his clothing. It had to have been concealed in some way, otherwise they would have immediately seen that it was just his hand, and they wouldn't have been fearful. I understand that all as a matter of, you know, common sense in a way, but looking at the text, it talks about the object. What is the object here? The object here is the hand, Your Honor. And the hand fits into these categories how? Well, that it was used in a manner that created the impression that it was such an instrument. I think additionally the fact that it was concealed by clothing. The hand was an instrument? Yes. The hand itself was used to mimic the shape of a gun, I believe, in terms of how it was positioned or in terms of what was being reached for under the clothing by the waistband. To the extent that the note indicates that the hand can be the object, because the example is the hand in a towel, right? Yes. And as the district court noted below its sentencing, the language there is such as, which the district court judge read to be an example of. It wasn't an all-inclusive list. The government's not asking the Court to expand the guideline. I mean, I think it's plain from the comment and the other ---- The hand in the towel was to create the appearance of a gun. I understand that. What I'm trying to understand is, in this case, the hand gesturing, how does that give the appearance of a gun? I think, Your Honor, that the hand was giving the appearance of a gun as the appearance that one was located under his clothing where he was reaching to. And to the extent that, you know, the hand was concealed, again, under clothing and that that's what he would be reaching for, especially in conjunction with the hand in the towel. He's not reaching into a store and saying, don't do nothing stupid, right? Why would what you're doing be stupid as the guy's reaching for his waistband if he doesn't have a gun to pull out of his waistband? To the extent that the Court has any further questions about that, I'm happy to speak more on that or to move to the victim restraint enhancement that was applied. Again, I think that in this case, there are clearly distinguishable facts from Anglin which the appellant relies on. In Anglin, a defendant instructed victims at gunpoint to lie on the floor. They did not, however, move to a separate confined space as was done here. And the first robbery on May 2nd, 2015, the defendant pushed the store employee into the inventory room. That fact is not disputed. The second attempt and the second robbery on May 15th, 2015, he forced two employees into the back of the store. The third one on May 19th, he herded the employees and customers again into a back room. In each of those instances, those facts are distinguishable from Anglin. Are you familiar with the case of United States v. Paul, the 2018 Second Circuit case? I'm not, Your Honor. In that case, the Court rejected the application of the enhancement where the defendant was, where the defendant forced an employee at gunpoint to the cash register. And what the Court held was, and I'm quoting, the enhancement is not to be added where the direction to move is typical of most robberies. And added the enhancement, therefore, and I quote, would simply add punishment to conduct that is typical of most store robberies. Why isn't the direction to move into an inventory room typical of most robberies of inventory? I think, Your Honor, that's readily distinguishable from an instance in which an employee is directed to a cash register, which I would assume is still in the open in the primary part of the store, where presumably there are store windows and passersby could see what's going on. Once you're forcing customers and employees into a back room that's secluded and cut off, really from the outside, I think that really ups the ante for them. They don't have any way to immediately have someone walking by on the street recognize that they're in distress and call the police. Unless the Court has any questions about either of the enhancements or the plea papers. Thank you. Thank you. Briefly, once again, there is no evidence that my client concealed his hand in a pocket or concealed his hand while he is holding it in his waistband. That was all additional facts that were not in the record. He didn't reach for his waistband. He just, according to the reports, kept his hand near his waistband. He didn't the conclusion, Judge Bianco, that you draw, that you want to say was not disputed as if he had a gun or making it believe he had a gun or wanting to push the employees into the back room. All of those are extra additional facts that either didn't exist in the conduct or doesn't make it ---- Each of the instances of the robbery, the PSR said he pretended to have a gun in his waistband. If you're arguing that he didn't have it in his waistband, he had his finger out so that anybody would see it was just his finger, that's a factual issue that ---- Well, I don't know about that. I don't know if it is a factual issue because I think it was the probation officer and then the government that chimed in and said, okay, we agree with the probation officer now because we had made a mistake. That's the probation officer's conclusion, that having your hand at your waist is as if you have a gun. There's no ---- I mean, the defendant could dispute that at sentencing. That's what the victims probably had said to the police and the probation department incorporated into the PSR, and there was no objection to that. Well, but he's not objecting to the fact. He's objecting to the conclusion as if he had a gun and, therefore, this guideline applied. And he did object to that. And as to restraint, herding the victims or the employees into the back room. Now, there's also additional facts here that weren't in the record, like what's the back room? Is it closed? Is it sealed? What is it? We don't know what it is. Just herding them to the other room, and I'll take that Paul case. Judge, I'll  But it just isn't enough to show by preponderance that the legal conclusions that these guidelines call for were supported by evidence, the texts of the guideline. And because the government changed its view to assuage the probation office and say, oh, yes, we're on board, that to me, that to the system of criminal justice, I suggest is a breach of a plea agreement that this is the sentence that we estimate without any enhancements. We have your arguments. Thank you. Thank you.